UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SONJA EMERY,<br>*Petitioner*, | )<br>) | 3:22-CV-1003 (SVN) |
| | ) | |
| v. | ) | |
| | ) | |
| TIMETHEA PULLEN,<br>*Respondent*. | )<br>) | January 20, 2023 |

## RULING AND ORDER ON MOTION TO DISMISS, MOTION TO AMEND PETITION, MOTION FOR EMERGENCY RELIEF, AND MOTION FOR STATUS UPDATE

Sarala V. Nagala, United States District Judge.

Petitioner Sonja Emery filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 initially seeking transfer to home confinement under the Coronavirus Aid, Relief, and Economic Security ("CARES") Act. Specifically, Petitioner contends that medical staff employed by the Bureau of Prisons ("BOP") have been deliberately indifferent to her serious ocular condition by failing to ensure that she attended recommended follow-up appointments with various specialists since the spring of 2022. Respondent, the Warden of the Federal Correctional Institution Danbury ("FCI Danbury"), where Petitioner was housed when she filed the petition, has filed a motion to dismiss the petition. ECF No. 10.

After filing her opposition to the motion to dismiss, Petitioner filed a motion to amend her petition, in which she represents that she was transferred to Western Massachusetts Regional Women's Correctional Center and reasserts her claim that prison officials have been deliberately indifferent to her serious medical needs (ECF No. 16). Petitioner has also filed a motion seeking emergency habeas relief because the BOP has informed her that she will be transferred to the Federal Transfer Center in Oklahoma, which Respondent confirmed will occur sometime in January of 2023 (ECF No. 31), and a motion captioned "Motion for Status Update" (ECF No. 33).

For the following reasons, the Court GRANTS Respondent's motion to dismiss, and finds Petitioner's other motions moot.

## I.     FACTUAL BACKGROUND

The habeas petition, the proposed amendments to the petition, and the medical records supplied by both Petitioner and Respondent,[1] deemed integral to the petition, are accepted as true for the purpose of the present motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002). On April 18, 2022, Petitioner was seen in the infirmary of FCI Danbury in response to her complaint that she had started to experience pressure behind her left eye, then blurry vision, and then ultimately lost vision in her left eye. ECF No. 2 at 1; ECF No. 12-3 at 139. Petitioner was transported to Danbury Hospital's Emergency Department, where the intake physician noted acute left eye blindness. ECF No. 2 at 1–3. After the results of a temporary artery biopsy were inconclusive, she was suspected of suffering from temporal arteritis syndrome and was prescribed steroids. ECF No. 2 at 3, 6. She was also evaluated by an ophthalmologist, neurologist, and rheumatologist. *Id.* at 3. She was discharged on April 28, 2022, with recommendations to follow up with an outpatient ophthalmologist, neurologist, and rheumatologist. *Id.* at 7. Medical staff at FCI Danbury submitted requests for those consultations on April 29, 2022. ECF No. 12-3 at 122.

On May 6, 2022, Petitioner was seen by medical staff at FCI Danbury complaining of blurry vision in her right eye, similar to what had happened in her left eye. ECF No. 2 at 57; ECF No. 12-3 at 113. Petitioner returned to Danbury Hospital, where an ophthalmologist found no significant changes in her vision since her discharge the previous week. ECF No. 2 at 33–34.

---

[1] While Petitioner and Respondent have provided the Court with hundreds of pages of medical records pertaining to the numerous medical conditions for which Petitioner has received treatment, the Court focuses on the medical records relevant to the ocular condition that is the subject of the present petition.

Petitioner was discharged with a recommendation to follow up with the ophthalmologist as an outpatient. *Id.* at 34.

On May 23, 2022, Petitioner saw Dr. Reynolds, an ophthalmologist, who also suspected that she was suffering from temporal arteritis syndrome. *Id.* at 15. Dr. Reynolds recommended that Petitioner be observed and reexamined in one or two months. *Id.* Medical staff at FCI Danbury promptly submitted a request for that follow-up consultation, and they submitted a request for an optometry consultation in response to Petitioner's request for corrective glasses. ECF No. 12-3 at 88. On August 4, 2022, Petitioner saw Dr. Wagner, an optometrist. ECF No. 12-3 at 19. He noted that Petitioner's vision was at the level of legal blindness and that glasses would not help her condition. *Id.* at 20. He also recommended consulting with ophthalmology regarding further testing. *Id.* at 13.

On October 11, 2022, and October 24, 2022, Petitioner was seen by Dr. Branchini, an ophthalmologist, who recommended an urgent evaluation by a rheumatologist to consider further steroid treatment. ECF No. 28-2 at 5, 8. On November 7, 2022, Petitioner was seen by an unnamed rheumatologist, who referred her to a surgeon to complete a temporary artery biopsy of her right eye, and recommended a follow-up. ECF No. 28-3. Although the record demonstrates that Petitioner had an appointment with the surgeon on December 1, 2022, it appears that, to date, the biopsy has not yet been performed. ECF No. 39 at 7.

## II.  PROCEDURAL HISTORY

In early August of 2022, Petitioner filed the present habeas petition pursuant to 28 U.S.C. § 2241. ECF No. 1. She alleged that, as of the date of the petition, she had not received the consultations to an optometrist, rheumatologist, or neurologist as requested following her hospitalizations. *Id.* at 6. She also generally contends that the medical staff at FCI Danbury are

3

deliberately indifferent to her serious medical condition. *Id.* at 6–7. Petitioner represents that her family has consulted an unnamed eye specialist who, without evaluating Petitioner, is "confident they can correct" her loss of vision in her right eye as long as she retains some sight in that eye. *Id.* at 9. She requests a Court order directing the BOP to place her on home confinement pursuant to the CARES Act, or to immediately release her,[2] so she may obtain treatment from that specialist. *Id.* She also appears to request calculation of her First Step Act ("FSA") credits. *Id.*

In early October of 2022, Petitioner filed a motion requesting leave to amend the petition. ECF No. 19. She alleges that she was transferred to the Western Massachusetts Regional Women's Correctional Center pending the outcome of a threat assessment by the Special Investigation Services of FCI Danbury, and that she has continued to receive inadequate medical care while incarcerated there. *Id.*; *see also* ECF No. 17. The motion does not appear to assert any new claims or grounds for relief. For that reason, and because the Court will nonetheless consider the factual allegations contained therein, the motion to amend the petition, ECF No. 19, is moot.

On November 23, 2022, Petitioner filed several motions and notices informing the Court that she will soon be transferred to the Federal Transfer Center in Oklahoma and asking for expedited relief. ECF Nos. 31, 32, 33, 42. Respondent informed the Court that the transfer will not take place until January of 2023. ECF No. 36 at 2. To date, that transfer does not appear to have occurred.

In addition to Petitioner's motions for expedited relief, presently pending before the Court is Respondent's motion to dismiss the petition, ECF No. 10. Specifically, Respondent contends that Petitioner has failed to exhaust her available administrative remedies; that the Court has no

---

[2] The petition requests home confinement pursuant to the CARES Act. ECF No. 1 at 9. In opposition to Respondent's motion to dismiss, however, Petitioner re-characterizes the relief sought as "immediate release," rather than home confinement. ECF No. 16 at 3.

4

authority to order the BOP to transfer her to home confinement under the CARES Act; and that Petitioner has failed to state a plausible claim that Respondent has been deliberately indifferent to her serious medical condition in violation of the Eighth Amendment.

### III.   LEGAL STANDARD

#### A.   28 U.S.C. § 2241

Section 2241 grants federal courts jurisdiction to issue writs of habeas corpus to prisoners "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A writ of habeas corpus under § 2241 "is available to a federal prisoner who does not challenge the legality of his sentence, but challenges instead its execution subsequent to his conviction." *Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 632 (2d Cir. 2001). An inmate may challenge matters pertaining to the execution of a sentence, such as prison conditions and transfers, under § 2241. *Id.*; *Jiminian v. Nash*, 245 F.3d 144, 146 (2d Cir. 2001). Habeas relief under § 2241 is available to a petitioner seeking release from confinement. *Baez v. Moniz*, 460 F. Supp. 3d 78, 82 (D. Mass. 2020) (citing *Wilkinson v. Dotson*, 544 U.S. 74, 78 (2005)).

#### B.   Rule 12(b)(6)

A motion to dismiss a habeas petition, like any other motion to dismiss a civil complaint, is governed by Federal Rule of Civil Procedure 12(b)(6). *Spiegelmann v. Erfe*, No. 3:17-CV-2069 (VLB), 2018 WL 1582549, at *1 (D. Conn. Mar. 29, 2018); *Anderson v. Williams*, No. 3:15-CV-1364 (VAB), 2017 WL 855795, at *5–6 (D. Conn. Mar. 3, 2017) (reviewing motion to dismiss § 2241 petition under Fed. R. Civ. P. 12(b)(1) and 12(b)(6)). To survive dismissal, the petition must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although "detailed factual allegations" are not required, a complaint must offer more than "labels

5

and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555–57.

Because Petitioner filed the present petition *pro se*, the Court must construe her filings "liberally" and interpret them "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006). "Despite the special solicitude that the Court must show [Petitioner] out of consideration for [her] *pro se* status, [her] petition must still include sufficient factual allegations to meet the standard of facial plausibility to survive a motion to dismiss under Rule 12(b)(6)." *Anderson*, 2017 WL 855795, at *6 (citation and internal quotation marks omitted).

In considering a motion to dismiss, the court typically may consider only the complaint, or, here, the petition. However, the petition "is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference," as well as any documents deemed "integral" to the petition. *Chambers*, 282 F.3d at 152–53 (citations and internal quotation marks omitted). *See also Subaru Distribs. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2005) (explaining that, in considering a motion to dismiss, "the court may consider any written instrument attached to the complaint as an exhibit or incorporated in the complaint by reference, as well as documents upon which the complaint relies and which are integral to the complaint"). To that end, because the petition relies on records relating to Petitioner's medical history and exhaustion of remedies, and because such records are integral to the complaint, the Court will consider those documents in this case, some of which were attached to Petitioner's various filings and others of which were submitted by Respondent in support of the motion to dismiss.

## IV. EXHAUSTION

### A. Legal Standard

Before filing a habeas petition pursuant to § 2241, prisoners are required to exhaust internal grievance procedures. *Carmona*, 243 F.3d at 634; *see also Razzoli v. Strada*, No. 10-cv-4802 (CBA), 2013 WL 837277, at *2 (E.D.N.Y. Mar. 6, 2013) (citing *Carmona*, 243 F.3d at 634). The exhaustion requirement applicable to § 2241 petitions is judicial, rather than statutory.[3] *See Carmona*, 243 F.3d at 634 ("[A]lthough § 1997e(a) of the Prisoner Litigation Reform Act contains a statutory administrative exhaustion requirement, we have held, in the context of a § 2254 petition, that the requirements of the Act do not apply to habeas proceedings.... Doubtless the same rule should obtain in § 2241 cases as in § 2254 petitions.") (cleaned up); *see also Beharry v. Ashcroft*, 329 F.3d 51, 56 (2d Cir. 2003) (noting that the distinction between a statutorily or judicially imposed exhaustion requirement is "pivotal" because "statutory exhaustion requirements are mandatory, while the judicial (common-law) exhaustion doctrine is discretionary and includes a number of exceptions"). The burden of demonstrating exhaustion of administrative remedies rests with the § 2241 petitioner, *Spring v. Schult*, No. 908-CV-0531 (LEK), 2009 WL 3232183, at *1 (N.D.N.Y. Oct. 1, 2009), and failure to exhaust administrative remedies "results in a procedural default." *Rosenthal v. Killian*, 667 F. Supp. 2d 364, 366 (S.D.N.Y. 2009); *see*

---

[3] Respondent contends that the statutory exhaustion requirement codified in the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), applies to the present § 2241 habeas petition because the petition challenges the conditions of Petitioner's confinement. Respondent does not, however, attempt to distinguish the Second Circuit case law characterizing exhaustion as prudential, rather than statutory, in the context of a § 2241 habeas petition. *See, e.g.*, *Carmona*, 243 F.3d at 634. In any event, the Court need not address Respondent's contention in light of its conclusion that excusal of the exhaustion requirement would not be warranted here.

7

*also Woodford v. Ngo*, 548 U.S. 81, 92 (2006) ("In habeas, the sanction for failing to exhaust properly (preclusion of review in federal court) is given the separate name of procedural default.").

The Second Circuit has identified four bases to excuse administrative exhaustion in the habeas context: "(1) available remedies provide no genuine opportunity for adequate relief; (2) irreparable injury may occur without immediate judicial relief; (3) administrative appeal would be futile; and (4) in certain instances a plaintiff has raised a substantial constitutional question." *Beharry*, 329 F.3d at 62; *Anderson*, 2017 WL 855795, at *7 (applying the four categories identified in *Beharry* to a § 2241 habeas petition). *See also Martinez-Brooks v. Easter*, 459 F. Supp. 3d 411, 437 (D. Conn. 2020) (considering a § 2241 petition and listing the exceptions to the administrative exhaustion requirement as: "futility ('exhaustion may be unnecessary where it would be futile, either because agency decisionmakers are biased or because the agency has already determined the issue'); incapability ('exhaustion may be unnecessary where the administrative process would be incapable of granting adequate relief'); and undue prejudice ('an unreasonable or indefinite timeframe for administrative action may sufficiently prejudice [petitioners] to justify a federal court in taking a case prior to the complete exhaustion of administrative remedies')") (citations omitted).

Relevant here, the BOP has a four-step process for inmates to exhaust administrative remedies: (1) informal resolution with prison staff, 28 C.F.R. § 542.13(a); (2) an initial formal request submitted to the Warden using a BP-9 form, *id.* § 542.14; (3) an appeal to the appropriate BOP Regional Director using a BP-10 form, *id.* § 542.15(a); and (4) a subsequent appeal to the BOP General Counsel using a BP-11 form, *id.* An administrative appeal is not fully exhausted until it has been considered by the General Counsel's Office according to the proper deadlines and

procedural rules. *Id. See also Woodford*, 548 U.S. at 91; *South v. Licon-Vitale*, No. 3:19-cv-1763 (VLB), 2020 WL 3064320, at *1 (D. Conn. June 9, 2020).

### B. Discussion

Respondent contends that Petitioner failed to exhaust her available administrative remedies and thus has procedurally defaulted on the claims set forth in the petition. The Court agrees.

Relevant here, Petitioner has pursued three administrative complaints. First, in early May of 2022, after Petitioner's hospitalizations but before she was seen by the outpatient specialists for follow-up care, Petitioner submitted a form for informal resolution seeking the care recommended upon her discharge, in apparent satisfaction of the first step of the administrative remedy process. ECF No. 2 at 65. In late May of 2022, Petitioner submitted a BP-9 request to Respondent pursuant to the second step of the administrative remedy process. *Id.* at 64; *see also* Magnusson Decl., ECF No. 12-4 ¶ 11. Petitioner requested glasses and an appointment with a new ophthalmologist. ECF No. 2 at 64. On June 13, 2022, Respondent denied the request on the grounds that Petitioner had already seen Dr. Reynolds, an ophthalmologist. *Id.* at 63. Respondent also noted that, per Dr. Reynolds' recommendation, a consultation request had been submitted for her to see an optometrist regarding Petitioner's request for glasses. *Id.*

On June 28, 2022, Petitioner timely submitted a BP-10 form to the Northeast Regional Office, appealing Respondent's denial of her BP-9 request. Magnusson Decl., ECF No. 12-4 ¶ 12. The Regional Director was required to respond to Petitioner's appeal within thirty calendar days, unless the Regional Director extended the time period and informed Petitioner of the extension in writing. 28 C.F.R. § 542.18. The Director of the Northeast Regional Office did not timely respond to Petitioner's appeal or notify her of an extension. Magnusson Decl., ECF No. 12-4 ¶ 12. In a case where the inmate does not receive a response within the allotted time, she "may consider the

absence of a response to be a denial at that level," and proceed to the next step of the administrative remedy process. 28 C.F.R. § 542.18. Petitioner did not, however, proceed to the next step by submitting an appeal to the BOP General Counsel using a BP-11 form. Magnusson Decl., ECF No. 12-4 ¶ 12. Because an inmate's claim is not considered fully exhausted until it is considered by the BOP General Counsel, *see South*, 2020 WL 3064320, at *1 (citing 28 C.F.R. § 542.15(a)), Petitioner's first administrative request is not fully exhausted and thus cannot support any claim for habeas relief pertaining to her medical condition.

Second, in June of 2022, Petitioner submitted another BP-9 request to Respondent pursuant to the second step of the administrative remedy process. Magnusson Decl., ECF No. 12-4 ¶ 13. Petitioner again requested glasses and an appointment with an optometrist. *Id.* On August 25, 2022—after Petitioner's appointment with Dr. Wagner, an optometrist, on August 4, 2022—Respondent denied the request. *Id.* Petitioner did not submit an appeal to the Northeast Regional Director using the BP-10 form. *See id.* Thus, Petitioner's second administrative request is not fully exhausted and cannot support any claim for habeas relief pertaining to her medical condition.

Third, in August of 2022, Petitioner submitted another BP-9 request to Respondent pursuant to the second step of the administrative remedy process, this time pertaining to the calculation of her good time credits under the FSA.[4] *Id.* ¶ 14. Soon thereafter, Respondent denied the request, and Petitioner did not submit an appeal to the Northeast Regional Director using the BP-10 form. *Id.* Thus, Petitioner's third administrative request is not fully exhausted and cannot support any claim for habeas relief pertaining to her FSA credits.

As noted above, the exhaustion of administrative remedies requirement is prudential with respect to a § 2241 habeas petition, *see Carmona*, 243 F.3d at 634, and a court can excuse a

---

[4] Neither party indicates whether Petitioner satisfied the first step of the administrative remedy process with respect to this request.

10

petitioner's failure to exhaust under certain circumstances, *see Beharry*, 329 F.3d at 62. Relevant here, Petitioner argues that she will suffer "irreparable injury" without immediate habeas relief. *See id.* Specifically, she contends that her ocular condition is deteriorating rapidly and, if not adequately treated, could cause her to lose her sight completely, which constitutes an extraordinary and compelling circumstance. ECF No. 16 at 3. While the Court is sympathetic to the discomfort caused by Petitioner's medical condition, the petition does not plausibly allege that any delay in treatment occasioned by her incarceration will cause irreparable harm to her eyesight. Petitioner alleges that her family has contacted an unnamed medical specialist who opined, without evaluating Petitioner firsthand, that her vision in her right eye could be corrected with an unspecified treatment if she retained some sight. *See* ECF No. 1 at 9. Petitioner seeks to have the Court infer from that allegation that if she is not immediately released, she will lose her eyesight completely because of delays in scheduling appointments while she is incarcerated. Such an inference is speculative, at best. The medical records from the specialists who have examined Petitioner over the last several months do not demonstrate any particular exigency to her condition that would warrant excusing the administrative exhaustion requirement. Rather, Petitioner recently received treatment from a hospital emergency department, Dr. Branchini, an ophthalmologist, and a rheumatologist, and none of the medical records from those evaluations demonstrate that she is at risk of losing her eyesight imminently if she does not receive a particular appointment or treatment. Rather, each medical specialist has recommended further follow-up and testing.

The requirement of exhaustion of administrative remedies serves "two main purposes." *Woodford*, 548 U.S. at 89 (addressing exhaustion requirements under the Prisoner Litigation Reform Act). First, exhaustion gives an agency "an opportunity to correct its own mistakes with

respect to the programs it administers before it is haled into federal court, and it discourages disregard of the agency's procedures." *Id.* (cleaned up).  Second, exhaustion promotes efficiency because "[c]laims can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court." *Id.*  Were the Court to entertain the petition on the merits when Petitioner has not exhausted her administrative remedies—or provided a legally sufficient explanation why the exhaustion requirement should be excused—the purposes of the exhaustion requirement, including allowing the medical apparatus in place at BOP to address Petitioner's health concerns, would not be served.  Therefore, the Court concludes that Petitioner has procedurally defaulted, and the petition must be dismissed on that ground.

## V. ALLEGED EIGHTH AMENDMENT VIOLATION

Even if the Court were to excuse the requirement that Petitioner exhaust her administrative remedies, however, dismissal of the Eighth Amendment claim raised in the petition would be warranted nonetheless because Petitioner fails to state a claim for deliberate indifference to a serious medical condition.[5]

### A. Legal Standard

The Eighth Amendment to the U.S. Constitution, which prohibits the infliction of "cruel and unusual punishments," U.S. Const. amend. VIII, "imposes a duty upon prison officials to ensure that inmates receive adequate medical care." *Salahuddin v. Goord*, 467 F.3d 263. 279 (2d Cir. 2006) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)).  "In order to establish an Eighth

---

[5] In the alternative, Respondent seeks dismissal on the ground that the CARES Act does not confer on this Court the authority to order the BOP to transfer Petitioner to home confinement.  As noted above, Petitioner re-characterized the petition as seeking release from BOP custody altogether, rather than transfer to home confinement.  She does not, however, identify a source for the Court's authority to grant the extraordinary habeas relief of release from confinement as a remedy for deliberate indifference of a serious medical need in violation of the Eighth Amendment. Because the Court concludes that Petitioner fails to plausibly allege the Eighth Amendment claim raised in the present habeas petition, the Court does not consider whether, or on what ground, it would have the authority to order her release if she were to ultimately prevail on her Eighth Amendment claim.

Amendment claim arising out of inadequate medical care, a prisoner must prove 'deliberate indifference to [her] serious medical needs.'" *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). The standard of "deliberate indifference to a prisoner's serious medical need" includes both subjective and objective components. *Id.* "The objective 'medical need' element measures the severity of the alleged deprivation, while the subjective 'deliberate indifference' element ensures that the defendant prison official acted with a sufficiently culpable state of mind." *Smith v. Carpenter*, 316 F.3d 178, 183–84 (2d Cir. 2003) (citing *Chance*, 143 F.3d at 702, and *Hathaway v. Coughlin,* 99 F.3d 550, 553 (2d Cir. 1996)). "Because the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law, not every lapse in prison medical care will rise to the level of a constitutional violation." *Id.* at 184.

The objective component of an Eighth Amendment violation requires the prisoner to demonstrate that she had a sufficiently serious "medical need," in other words, a "serious illness or injury resulting in the infliction of unnecessary pain and suffering." *Id.* at 183–84 (citing *Estelle*, 429 U.S. at 105). In the Eighth Amendment context, the Second Circuit has held that, where a prisoner alleges "a temporary delay or interruption in the provision of otherwise adequate medical treatment, it is appropriate to focus on the challenged *delay* or *interruption* in treatment rather than the prisoner's *underlying medical condition* alone in analyzing whether the alleged deprivation is in 'objective terms, sufficiently serious.'" *Id.* 185 (emphasis in original) (quoting *Chance*, 143 F.3d at 702).

In addition, the subjective component requires the prisoner to demonstrate that the prison official's actions were more than "an inadvertent failure to provide adequate medical care[.]" *Id.* (citing *Estelle*, 419 U.S. at 105–06). *See also Chance*, 143 F.3d at 703 (explaining

13

that "negligence, even if it constitutes medical malpractice, does not, without more, engender a constitutional claim"). Rather, "[a]n official acts with the requisite deliberate indifference when that official knows of and disregards an excessive risk to inmate health or safety," which is "a state of mind equivalent to the familiar standard of recklessness as used in criminal law." *Smith*, 316 F.3d at 184 (internal quotation marks omitted) (quoting *Chance*, 143 F.3d at 702, and *Phelps v. Kapnolas,* 308 F.3d 180, 186 (2d Cir. 2002) (per curiam)). Although "'mere medical malpractice' is not tantamount to deliberate indifference," conduct may rise to the level of deliberate indifference when the prison official's act or failure to act "evinces 'a conscious disregard of a substantial risk of serious harm.'" *Hathaway*, 99 F.3d at 553 (quoting *Farmer*, 511 U.S. at 839).

B. Discussion

For the purpose of the present motion to dismiss, the Court presumes, and Respondent does not dispute, that the challenged delay in treatment of Petitioner's ocular condition as alleged constitutes a "serious illness or injury resulting in the infliction of unnecessary pain and suffering." *Smith*, 316 F.3d at 183–84. While this satisfies the objective element of a deliberate indifference claim, however, the petition does not contain sufficient factual matter that, accepted as true, would amount to subjective deliberate indifference on the part of BOP medical staff in satisfaction of the second element. *See id.* at 184. Petitioner does not identify any inadequacy with respect to the care she has received from Dr. Reynolds, the first ophthalmologist; Dr. Wagner, the optometrist; Dr. Branchini, the second ophthalmologist; the unnamed rheumatologist; or the physicians who treated her at Danbury Hospital. Rather, she generally alleges that the medical staff at FCI Danbury have not arranged her specialist follow-up outpatient care quickly enough.

At worst, however, these allegations would amount to negligence, "a culpability level that cannot support an Eighth Amendment claim" for deliberate indifference. *Santos v. Nicholls*, No.

14

10 Civ. 3159 (JPO), 2013 WL 3305336, at *5 (S.D.N.Y. July 1, 2013) (citing *Chance*, 143 F.3d at 703). Prison medical staff may be deliberately indifferent, not merely negligent, where they chronically refuse to provide a prisoner with prescribed specialist medical care as ordered by the prisoner's treating physician. *See Stevens v. Goord*, 535 F. Supp. 2d 373, 386–87 (S.D.N.Y. 2008) (finding a genuine issue of material fact as to prison medical staff members' deliberate indifference where the staff egregiously and repeatedly failed to provide the prescribed physical therapy despite the prisoner's chronic and severe pain); *Leckie v. City of New York*, No. 19-CV-6719 (PGG/RWL), 2022 WL 2442375, at *16 (S.D.N.Y. June 30, 2022) (noting that allegations that prison officials made "*no* effort to refer" the prisoner for the necessary procedure after the treating physician deemed it necessary raised a plausible claim sufficient to survive a motion to dismiss) (emphasis in original). On the other hand, a short delay in providing treatment, absent awareness of any excessive or imminent risk posed to the prisoner's health due to the delay, does not rise to the level of criminally reckless conduct that evinces subjective deliberate indifference. *Salahuddin*, 467 F.3d at 282 (granting summary judgment in favor of a physician who "was not aware" that a five-month postponement of a biopsy procedure would cause the prisoner serious harm); *Santos*, 2013 WL 3305336, at *5 (explaining that a prison official's "choice not to schedule an immediate appointment with" a medical provider did not support a finding of deliberately indifferent conduct).

While Petitioner's allegations evince some delays in receiving outpatient specialist treatment, the petition is devoid of any allegations that delays are the result of deliberate indifference on the part of medical staff at FCI Danbury. Indeed, Petitioner's medical records demonstrate that the medical staff at FCI Danbury have promptly submitted consultation requests each time Petitioner has been required to consult an outpatient specialist, and that she has generally

15

seen each of the specialists she has been instructed to see within a reasonable period after the corresponding consultation request.[6]

Because Petitioner has not alleged any subjective deliberate indifference on the part of the medical staff at FCI Danbury, the Court concludes that she has failed to plausibly state an Eighth Amendment claim. Thus, even if the Court were to excuse Petitioner's failure to exhaust such a claim, dismissal would be warranted.

## VI. CONCLUSION

For the reasons described above, Respondent's motion to dismiss, ECF No. 10, is GRANTED. The Court denies as moot Petitioner's motion to amend the petition, ECF No. 19; her emergency motion for an expedited ruling, ECF No. 31; and her motion for a status update, ECF No. 33. Any appeal of this Ruling would not be taken in good faith. The Clerk is directed to enter judgment for Respondent and close this case.

**SO ORDERED** at Hartford, Connecticut, this 20th day of January, 2023.

                                               /s/ Sarala V. Nagala
                                               SARALA V. NAGALA
                                               UNITED STATES DISTRICT JUDGE

---

[6] Petitioner's allegation in ECF No. 38 that, if she were released, her sister, who works at New York University in Long Island, could get all the required appointments set up for her within two to three days and a biopsy set up whenever the surgeon has availability, does not bear on whether *Respondent* has acted with deliberate indifference to her health. *See* ECF No. 38 at 2. The question before the Court is not whether Petitioner could receive quicker treatment if she were no longer incarcerated but, rather, whether Respondent's conduct rises to the level of an Eighth Amendment violation. As the Court has explained above, it does not.